RUFUS F. FISKE *vs.* EDNA A. F. QUINT & another.

Essex.    November 12, 1930. — January 7, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Mortgage,* Of real estate: purchase by tenant in common at foreclosure sale. *Equity Jurisdiction,* Accounting. *Tenants in Common.*

One of several tenants in common of a parcel of land occupied it for many years, during which time he paid from his own funds the taxes thereon and interest on a mortgage note secured by a mortgage thereof; and, upon the mortgagee requesting payment of such note, procured the assignment of the mortgage and note and foreclosure of the mortgage by the assignee, and purchased and received a deed of the property at the foreclosure sale for the amount of the mortgage note plus interest due, auctioneer's fees and advertising, which he paid from his own funds to the assignee. It did not appear that he had agreed to pay compensation to his cotenants for his occupation of the property, or that he realized net profits from the use or working of the

land. *Held,* that at the sale he acquired legal title to the property for the common benefit of himself and his former cotenants, who were entitled to a decree in a suit in equity directing him to convey to them their respective undivided interests, but only upon payment to him of their proportional shares of all sums so paid by him from his own funds.

BILL IN EQUITY, filed in the Superior Court on February 11, 1929.

The suit was referred to a master. The bill and material findings by the master are described in the opinion. By order of *Broadhurst,* J., there was entered an interlocutory decree confirming the report. The final decree described in the opinion was entered by order of *Greenhalge,* J. The plaintiff appealed from the final decree.

*P. A. Kiely,* for the plaintiff.

*H. M. Leavitt,* for the defendants.

PIERCE, J. This is a bill in equity wherein the plaintiff prays that a certain foreclosure deed and entry of foreclosure of certain land and buildings thereon, in Saugus, Massachusetts, be declared null and void, and that it be decreed that the plaintiff is entitled to two ninths of said real estate and that he receive compensation for the use of said premises.

The master's report, which was confirmed without objection by an interlocutory decree, discloses in substance the facts which follow: Frances G. Fiske of Saugus died intestate on October 29, 1912, leaving the plaintiff, the defendants, and her husband, Frank E. Fiske, as her only heirs at law. The husband was duly appointed administrator of her estate on November 14, 1912. On May 8, 1913, he filed a petition in the Probate Court for license to mortgage the real estate described in the bill of complaint for the purpose of raising funds to pay the debts of the estate, namely, taxes amounting to $1,000 and three mortgage notes amounting to $2,300. The petition was assented to in writing by the plaintiff and the two defendants. On May 8, 1913, a license issued authorizing the administrator to mortgage the described premises for the sum of $3,300, payable in three years with interest at

the rate of six per cent per annum, and on the same day the premises were mortgaged to the First Church Congregational, of Swampscott.

On August 21, 1925, the trustees of said church notified one Woodbridge, the broker through whom the mortgage had originally been placed, that they required the payment of the loan forthwith. Woodbridge notified Frank E. Fiske and, as the result of some conversation between them, Woodbridge, on said August 21, 1925, paid the trustees $3,300 plus interest, from his own funds, and took from the trustees an assignment of the mortgage and mortgage note, which was duly recorded. On the same day he caused a foreclosure notice to be published·in the Saugus Herald, and on September 1, 1925, he took possession of the premises for the purpose of foreclosing the mortgage, and caused the certificate of possession to be duly recorded. On September 14, 1925, the mortgage was foreclosed by public auction on the premises. The sale was attended only by the auctioneer and Frank E. Fiske, and the premises were sold to Frank E. Fiske, the highest bidder, for the sum of $3,000. On September 28, 1925, Fiske paid Woodbridge out of his own funds $3,370.40, which covered the face of the mortgage, $3,300, plus interest to that date. Fiske also paid the auctioneer's fees, making a total of $3,411, and the cost of advertising, the amount not being stated. The inventory of the estate showed real estate valued at $5,425, but no personal property. The master found that the value of the real estate at the time of the foreclosure sale was $8,000.

The husband continued to occupy the premises and work the land from.October 29, 1912, the day his wife died, until his own death on June 25, 1928. There is nothing in the record to indicate that his occupation and use of the land were in any manner opposed by his children — the plaintiff and defendants. During that period and prior to the foreclosure of the mortgage on September 14, 1925, he paid from his own funds interest on the mortgage note amounting to $2,376 in addition to the

payments to Woodbridge above mentioned. He also paid the taxes assessed against the real estate from 1913 to 1925, inclusive, amounting to $2,565.88. He never made any distribution of his wife's estate. The plaintiff did not learn of the foreclosure until after his father's death.

The master found that Woodbridge in foreclosing said mortgage acted at the request of and in behalf of said Frank E. Fiske, and that Fiske must have known that the effect of this buying in the property at the foreclosure sale would be to deprive the plaintiff of the interest to which he was entitled in his mother's estate; and further found as a fact that the plaintiff was not guilty of laches. There was evidence that in 1924 Fiske by his will gave all his right, title and interest in the real estate owned by his wife at her death to his son James, one of the defendants, and requested that the plaintiff and Fiske's daughter Edna should convey to James their interests in said premises within one year after his death, and he imposed the penalty of disinheritance should they neglect or refuse so to do.

On July 2, 1930, the Superior Court entered a final decree to the effect that Frank E. Fiske held the title to the real estate purchased by him at the foreclosure sale for the common benefit of himself and his coheirs in the estate of his wife; that the interest of the plaintiff was that of a tenant in common of an undivided two ninths of the real estate; that the interest of the defendants acquired under the will of Frank E. Fiske was subject to the right of the plaintiff as tenant in common in said undivided two ninths; and that the plaintiff is entitled to receive from the defendants, upon payment by the plaintiff to the administrator with the will annexed of Frank E. Fiske of his proportional part of the amounts paid by Frank E. Fiske at the foreclosure sale, and for the interest accrued on the mortgage, and for the taxes accrued on the real estate, a deed of the defendants' right, title and interest in and to an undivided two ninths of said real estate. By this final decree it was ordered that if the plaintiff shall on or before September 1 pay to the ad-

ministrator with the will annexed of Frank E. Fiske the sum of $1,856.20, which is two ninths of the amount paid out by Frank E. Fiske at said mortgage sale, plus two ninths of the aggregate interest paid on the note secured by the mortgage on the property from 1913 to 1925 inclusive, plus two ninths of the taxes paid on the property by Frank E. Fiske from 1913 to 1925 inclusive, the defendants shall forthwith execute and deliver to the plaintiff a deed of all their right, title and interest in and to an undivided two ninths of said real estate. The case is before this court on the appeal of the plaintiff from the final decree as entered.

On the decease of Frances G. Fiske, intestate, her husband surviving her became a tenant in common with her children in the real estate owned by her at her death, and which was subsequently mortgaged to pay her debts and the three mortgage notes which were secured by a mortgage on the said real estate. G. L. c. 190, § 1. In the absence of an express agreement Frank E. Fiske was not liable to make compensation to his children for the use of the entire premises from the death of his wife until his death, whether such continued occupation was with or without their consent. *Badger* v. *Holmes,* 6 Gray, 118. *Kirchgassner* v. *Rodick,* 170 Mass. 543. *Moseley* v. *Moseley,* 240 Mass. 22. *Giuggio* v. *Paoli,* 244 Mass. 279. Nor could the children as tenants in common with their father recover from him their share of the profits which he realized from working the land beyond net profits or in excess of a " just share " of such profits. *Dewing* v. *Dewing,* 165 Mass. 230. No facts appear in the record to establish or to warrant an assumption that net profits were realized from the use or working of the land in question by the father. The payment of the mortgage debt to the trustees, through the agency of Woodbridge, by Frank E. Fiske with his own money, operated for the benefit of all the tenants if they should elect to pay their proportional share thereof, and placed the legal title in Frank E. Fiske with the right of possession as against his cotenants until the amount paid by him and all proper charges above his

proportional share were repaid to him or to those who upon his death became authorized to hold the premises in his stead. *Hurley* v. *Hurley*, 148 Mass. 444. *Barnes* v. *Boardman*, 152 Mass. 391. *Kerse* v. *Miller*, 169 Mass. 44. *Solis* v. *Williams*, 205 Mass. 350. The same rights and obligations between the parties arise from the payment of the taxes which were assessed and were liens upon the land from 1913 to 1925 inclusive. The final decree was right and should be affirmed with costs.

*Ordered accordingly.*