LEO BILODEAU *vs.* ANGELA MAFFEI, administratrix.

Suffolk. April 8, May 2, 1941. — May 28, 1941.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Damages,* For tort. *Proximate Cause.*

In an action for false imprisonment, evidence that the plaintiff was arrested as he was starting for a place where he had been promised work and was released the same morning, and that when he went to that place "that day" he found that someone else had been employed, would not have warranted a finding that loss of the promised job was proximately connected with the defendant's wrongful conduct, and such loss could not be considered in assessing damages.

TORT, originally against James Maffei and after his death defended by the administratrix of his estate. Writ in the Superior Court dated December 5, 1933.

The action was tried before *Brogna,* J.

*T. A. Moran,* for the plaintiff.

*C. C. Steadman & H. M. Dracos,* for the defendant, submitted a brief.

Cox, J. The jury returned a verdict for the plaintiff in the sum of $1 in this action of tort for false imprisonment. It is said in the bill of exceptions that everything necessary for their consideration is stated therein. The only recital of evidence is that of the plaintiff and is as follows: As he left his house to go to work, he was arrested and taken to court. He was released "the same morning." When he went to work "that day his job was gone." The boss had employed someone else for "that job." He had not worked at "this job as yet," and was not employed at the time of the arrest, but he had "this job to go to." He had been "promised this job at a dollar an hour by a fellow named Brown." He did not work or get work for a long time thereafter. The judge instructed the jury, subject to the plaintiff's exception, to "Pay no attention to the promised job as an element of damage," and gave as his reason for this instruction that the evidence was not sufficient to warrant the jury in finding a binding contract for a job, and that, even if there were a binding contract, this was not a proper element of damage to be considered "because this is not an action for interference with contract nor for loss of contract, it is an action for false imprisonment." He gave "further proper instructions on other elements of damages." Subject to the plaintiff's exception, he refused to instruct the jury that "If by the arrest the plaintiff failed to get work he otherwise would have obtained, he is entitled to recover for such loss," and that the "pecuniary value of time lost in consequence of the unlawful act is a proper element of damage." These are the only exceptions that have been argued by the plaintiff.

The jury, by its verdict, established liability. In an action of this character, the defendant is liable for such damages as are the direct result of his wrongful conduct, see *Meagher* v. *Driscoll*, 99 Mass. 281, 285, and damages such as the law could imply from the facts alleged and proved, may be recovered. *Antokol* v. *Barber*, 248 Mass. 393, 395. It is an obvious consequence of an unlawful arrest that a plaintiff is deprived of some portion of his time. It is unnecessary to consider whether the plaintiff

should have alleged, as special damages, the facts that could have been found from his testimony, as that evidence was received and remained in the case.

The instruction of the judge to the jury to pay no attention to the promised job as an element of damage is not erroneous, even if the reasons given are. *Wheeler* v. *Tarullo,* 237 Mass. 306, 309, and cases cited. We are of opinion that there was no error in this instruction. The case of *Brown* v. *Cummings,* 7 Allen, 507, was for assault and battery with an allegation that by reason thereof the plaintiff lost a position to which he was about to be appointed. He testified that being disabled by the assault and battery, he soon afterwards withdrew his application for the position. It was held that the evidence was too remote and should have been excluded. The court said, at page 509, "We do not see how the loss of an office can be proximately connected with an assault and battery as its cause. There must be intervening events which make the connection more or less remote; and it is difficult to see how the result can happen without the addition of independent causes also. It is somewhat like the case of a merchant who should offer to prove that, in consequence of an assault and battery, he was unable to go to his store, and thereby lost the opportunity to close a particular bargain which would have been profitable." And it was pointed out that one of the intervening causes of the loss of the office appeared to have been a voluntary act of the plaintiff's own will, and that there "must also have been the concurrent voluntary acts of other men." In *Hoey* v. *Felton,* 11 C. B. (N. S.) 142, 142 Eng. Rep. Reprint, 749, the plaintiff was apprehended on an unfounded charge and detained for one half hour, until two o'clock. There was evidence that he would have been engaged as a workman if he had presented himself at the factory at two o'clock on the day in question, but that, being unwell from the treatment he received, he went home and did not go to the factory until the next morning, when he found that his intended employer had engaged another man. It was held that this evidence was too remote to establish any damages. It was said, at page 146,

"The wrong would not have been followed by the damage, if some facts had not intervened for which the defendant was not responsible."

In the case at bar the substance of the plaintiff's evidence is that he had been promised a job at $1 an hour "by a fellow named Brown," and that when he went to work, someone else had been employed. It is not quite the case of losing a position that one already had. Furthermore, there is nothing to show the length of time that the plaintiff was confined. It does appear that he was released the same morning that he was arrested, but it does not appear that he went to the promised work immediately. All that does appear was that when he went on "that day," his job was gone. It does not appear but that delay of the plaintiff on his own account in going for the promised work may not have been a factor in his not receiving it, and we think that the inference is not warranted that it was not. Furthermore, the fact is established that whoever was to give the plaintiff the job that had been promised him by Brown did not keep his promise. But, assuming that it could have been found that the promise of Brown was, in effect, the promise of the intending employer, that employer as was said in the *Hoey* case, "changing his purpose in respect of the plaintiff, . . . [made] an engagement with another person" (page 146). Compare *Gariety* v. *Fleming*, 121 Kans. 42, 44; *Thompson* v. *Ellsworth*, 39 Mich. 719, 723; *Bailey* v. *Warner*, 118 Fed. 395, 397; *Stoecker* v. *Nathanson*, 70 L. R. A. 667.

The first request that was refused, as far as appears from the record, is based upon the evidence that has just been considered, and, in view of our conclusion as to the effect of that evidence, it follows that there was nothing upon which to base the request, and no error in its refusal.

We are of opinion that there was no error in the denial of the second request. It may be assumed that the proposition of law contained in the request is sound, but the difficulty is that, as already pointed out, there is nothing in the record to show the length of time the plaintiff may have lost. It was a part of the plaintiff's case to prove his

damages, and if he fails to prove the facts upon which an estimate of such value can be founded, he is entitled to only nominal damages. *Staal* v. *Grand Street & Newton Railroad,* 107 N. Y. 625. *Baker* v. *Manhattan Railroad,* 118 N. Y. 533, 537. *Farrington* v. *Cheponis,* 82 Conn. 258, 261. The record fails to disclose any evidence, direct or inferential, upon which the request could be based.

*Exceptions overruled.*